Case No. 23-4352

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | Case No.:23-4352 |
| ROWE PLASTIC SURGERY OF NEW JERSEY, L.L.C & EAST COAST PLASTIC SURGERY, P.C. | COMPLAINT |
| Plaintiff, | |
| - Against - | |
| UNITED HEALTHCARE, | |
| Defendant(s). | |

Plaintiff(s), ROWE PLASTIC SURGERY OF NEW JERSEY, L.L.C & EAST COAST PLASTIC SURGERY, P.C. ("The Provider(s)"), by and through their attorneys Lewin and Baglio, LLP, bring this complaint against UNITED HEALTHCARE, (herein after "UHC") and alleges as follows upon knowledge as to themselves and their own actions and otherwise upon information and belief:

## JURISDICTION, VENUE, AND PARTIES

1) This Court has Subject Matter Jurisdiction pursuant to Title 28, Section 1332 of the United States Code (28 U.S.C. § 1332(a)), Diversity Jurisdiction; the parties are residents of different states and the amount in dispute is in excess of Seventy Five Thousand Dollars ($75,000.00).

2) UHC is a corporation, and at all times mentioned herein was, a Minnesota corporation with its principal place of business in Minnetonka, Minnesota.

3) UHC is an insurer authorized to do business in New York State.

4) UHC violated New York law while doing business in New York State.

5) UHC does business within the EASTERN DISTRICT OF NEW YORK.

L&B File No.: 2202.COM.61

6) ROWE PLASTIC SURGERY OF NEW JERSEY, L.L.C. (herein after "RPSNJ") is a/an L.L.C. existing and operating under the laws of the State of New Jersey, with its principal place of business, mailing address and registered agent in Montclair, NJ 07042-2212.

7) Non-party Sergio Perez, M.D. is affiliated with RPSNJ; RPSNJ is an entity through which Non-party Sergio Perez, M.D. does business.

8) Non-party Sergio Perez, M.D. rendered medical services to Non-Party LKJ[1] for which RPSNJ sought payment from UHC.

9) EAST COAST PLASTIC SURGERY, P.C. (herein after "ECPS") is a/an P.C. existing and operating under the laws of the State of New Jersey with its principal place of business, mailing address and registered agent in Red Bank, NJ 07701-2178.

10) Non-party Charles Pierce, M.D. is affiliated with ECPS; ECPS is an entity through which Non-party Charles Pierce, M.D. does business.

11) Non-party Charles Pierce, M.D. rendered medical services to Non-Party LKJ for which RPSNJ sought payment from UHC.

---

[1] LKJ are the initials of a consumer of UHC's health insurance products.

L&B File No.: 2202.COM.61

# FACTUAL ALLEGATIONS

A. **Background**

12) RPSNJ and ECPS are plastic surgery practices. Non-party Sergio Perez, M.D. and Non-party Charles Pierce, M.D. were educated and trained at top surgical institutions. RPSNJ and ECPS provide expertise in microsurgery. Non-party Sergio Perez, M.D. and Non-party Charles Pierce, M.D. are trained in and implement the latest and most innovative techniques to reduce scarring and trauma from surgery. RPSNJ and ECPS are widely regarded for their short-scar nipple saving breast reduction technique.

13) LKJ needed reduction mammaplasty.

14) Non-party Sergio Perez, M.D. determined LKJ was a candidate for reduction mammaplasty.

15) At all relevant times, LKJ and UHC shared the costs of medical services rendered by out-of-network provider(s) [2].

16) Non-party Sergio Perez, M.D., Non-party Charles Pierce, M.D., RPSNJ and ECPS are not part of any "provider network" organized or subscribed to by UHC; UHC treats them as non-participating providers, commonly known as out-of-network providers.

---

[2] See *Surprise Billing in Private Health Insurance: Overview of Federal Consumer Protections and payment for Out-of-Network Services* R46856 July 26, 2021, Rosso Shen & Isserman Congressional Research Digital Collection

17) A service rendered by an out-of-network provider is referred to as out-of-network services.

18) Because there are no contracts between out-of-network providers and UHC, UHC determines the total amount of payment for out-of-network services, and only after determining the proper amount UHC owes can LKJ's share of the costs be calculated.

**B.    Sergio Perez, M.D. and Non-Party Charles Pierce, M.D. and UHC enter into an ad-hoc agreement to render services to LKJ**

*1. UHC offered a unilateral contract*

19) On or about 5-2-22, an RPSNJ and ECPS employee contacted UHC and spoke to a UHC employee.

20) During phone conversations between RPSNJ and ECPS's employees and UHC's employees concerning services to be rendered to LKJ, UHC's employee represented that it would reimburse the services rendered to LKJ based upon 90th percentile of UCR.

21) 90th percentile of UCR is an industry pricing term that means UHC would pay an amount equal to 90th percentile of the UCR.

22) By representing that it would reimburse medical services at 90th percentile of the UCR, UHC made a unilateral offer to reimburse services rendered using 90th percentile of the UCR to determine the amount of reimbursement, if any.

(a) *UHC offered a price expressed in terms of commercial practice and trade usage, an acceptable means of identifying a price in New York*[3]

23) Typically, health insurers, like UHC, determine the amount it pays to out-of-network providers using either of two methods: a UCR method or a Reference Based method.

24) The UCR method is when the insurer uses a percentile threshold of the costs for a service rendered by similar providers in the same geographic area or marketplace to price a claim for medical services.

25) The Reference Based method is when the insurer utilizes a benchmark, such as the Centers for Medicare and Medicaid ("CMS") pricing, to price a claim for medical services.

26) At all times, UHC determines the data and method used to determine the amount it pays.

27) An insurer will typically disclose the amount it will reimburse for a service rendered by an out-of-network provider as a percentage of UCR or a multiple of CMS; this is typically called the out-of-network rate or the OON rate.

28) New York Insurance Law §§ 3217-a(a)(19)(B) and 4324(a)(20)(B) and Public Health Law § 4408(1)(t)(ii) require insurers to disclose the amounts paid for out-of-network services as a percentage of the UCR.

29) The 75th-80th percentile range of the UCR is a percentile threshold recognized in the healthcare industry as a reasonable value for a medical service.

---

[3] *Cobble Hill v. Henry & Warren*, 74 N.Y.2d 475 (1989)

30) In the New York area, the 80th percentile of providers' charge for a service in a geographic area is the usual and customary cost for that service.

31) FAIRHealth data is a benchmarking database maintained by a nonprofit organization that is recognized by New York State Department of Financial Services and in the healthcare industry as a reliable source for provider pricing and for determining UCR.

### 2. *RPSNJ and ECPS accepted UHC's offer of a unilateral contract by performance*

32) On 7/6/22, RPSNJ and ECPS accepted UHC's offer by rendering bilateral breast reduction to LKJ.

33) RPSNJ and ECPS submitted its billing to UHC.

(a) *Explanation of billing*

34) RPSNJ and ECPS billed UHC a total of $300,000.00 for the services rendered on 7/6/22 indicating the services it rendered using industry standard billing codes, known as "CPT codes." RPSNJ and ECPS also substantiated the use of those CPT codes by including the relevant medical documentation with its billing.

35) It is industry standard practice for UHC to rely upon the billing codes submitted by a medical provider to determine the amount UHC would pay.

36) RPSNJ and ECPS billed UHC $150,000.00 for the services Sergio Perez, M.D. rendered and $150,000.00 for the services Charles Pierce, M.D. rendered.

### 3. *UHC breaches the agreement by failing to pay the offered price*

37) UHC accepted RPSNJ and ECPS's performance.

38) UHC did not deny RPSNJ and ECPS's claim.

39) UHC intentionally issued a payment that was less than what was offered, was late, and was unreasonable.

40) Upon receipt of the billing, UHC partially performed its obligation by adjudicating the claims, determining that RPSNJ and ECPS had a right to payment and then issued payment to RPSNJ in the amount of $1,150.33 for the services Sergio Perez, M.D. rendered and $184.05 to ECPS for the services Charles Pierce, M.D. rendered.

41) UHC partially performed its part of the agreement because it did not issue payment in an amount equal to 90th percentile of the UCR.

### *4. UHC's automated claims processing results in underpaid claims*

42) Upon information and belief, UHC has, as is common in the health insurance industry, largely automated its claims adjudication process.

43) Upon information and belief, UHC has designed and implemented its automated claims adjudication process to ensure that claims for payment received by UHC for all services rendered by any out-of-network providers are intentionally underpaid.

44) Upon information and belief, UHC intentionally underpays out-of-network services to artificially reduce gross costs for medical services and to increase its profits.

45) Every dollar that UHC was obligated to pay that it didn't pay was a dollar kept in its pocket as profit.

46) While underpayment serves as a windfall for UHC, being misled into providing medical services leaves the medical provider with a broken promise and the legal bills associated with attempting to be made whole again.

47) Upon information and belief, when UHC processes the claims it receives it relies on the information reflected in the claim itself, and particularly the CPT code, to determine the date of service, the service provided to the consumer, and the medical provider's network status, i.e., participating provider or non-participating provider.

48) Upon information and belief, CPT codes are among the most important pieces of information included in a claim to UHC, and a primary determinant of the amount UHC will ultimately pay.

49) Upon information and belief, the type and degree of care indicated by the CPT code(s) included in a claim is a primary determinant of what UHC will pay on the claim.

50) Upon information and belief, UHC intentionally issues improper and reduced payment for services rendered by out-of-network providers.

51) The automated process means that UHC routinely applies limitations on reimbursement improperly . The improper application of limitations on reimbursement improperly reduces the amount of UHC's payment.

52) The delta between what UHC paid on the claim identified in the Complaint and what UHC should have paid is so substantial it forecloses the possibility that UHC merely made a mistake.

### C. UHC's payment was unreasonable and caused RPSNJ and ECPS to suffer damages

53) By paying $1,334.38 to RPSNJ and ECPS UHC breached the contract.

54) $1,334.38 is not the amount agreed to and is not a reasonable value for bilateral breast reduction because it is not within the 75th-80th percentiles of UCR for bilateral breast reduction; as a result RPSNJ and ECPS suffered damages.

55) UHC did not use 90th percentile of the UCR to calculate the payment for bilateral breast reduction therefore, UHC incorrectly calculated its payment to RPSNJ and ECPS; as a result RPSNJ and ECPS suffered damages.

56) Alternatively, UHC intentionally incorrectly calculated 90th percentile of UCR resulting in an underpayment to RPSNJ and ECPS; as a result RPSNJ and ECPS suffered damages.

57) UHC did not properly apply industry coding standards for determining limitations on reimbursement for the services rendered, therefore, UHC incorrectly calculated its payment to RPSNJ and ECPS; as a result RPSNJ and ECPS suffered damages.

## FIRST CAUSE OF ACTION- BREACH OF CONTRACT

58) RPSNJ and ECPS repeat(s) and re-allege(s) the foregoing paragraphs as if fully set forth herein.

59) RPSNJ and ECPS and UHC entered into a contract for Non-party Sergio Perez, M.D. and Non-party Charles Pierce, M.D. to render medical services to LKJ.

60) Non-party Sergio Perez, M.D. and Non-party Charles Pierce, M.D. provided all the medical services contracted for, but UHC has failed and refused to pay RPSNJ and ECPS for those services as agreed between the parties.

61) As a result of UHC 's actions RPSNJ and ECPS have suffered damages in an amount to be determined by the trier of fact.

### S<sub>ECOND</sub> C<sub>AUSE OF</sub> A<sub>CTION</sub> U<sub>NJUST</sub> E<sub>NRICHMENT</sub>

62) RPSNJ and ECPS repeat(s) and re-allege(s) the foregoing paragraphs as if fully set forth herein.

63) UHC's failure to pay amounts due enriched them.

64) UHC's retention of the unpaid amount for the medical services provided, is improper, and it is against equity and good conscience to allow UHC to keep the monies.

65) RPSNJ and ECPS conferred a benefit upon UHC under circumstances where UHC knew or should have known that RPSNJ and ECPS expected to be compensated for the benefit according to usual and customary prevailing rates for those services.

66) The benefit conferred upon UHC was the benefit of its bargain, bilateral breast reduction, and other medical services rendered to LKJ.

67) UHC knew or should have known that RPSNJ and ECPS expected to be reimbursed 90th percentile of the UCR for the services rendered to LKJ, because UHC had reimbursed RPSNJ and ECPS for the same services rendered to non-

L&B File No.: 2202.COM.61

party beneficiaries at a rate substantially greater than the reimbursement issued to RPSNJ and ECPS.

68) As a result of UHC's actions RPSNJ and ECPS suffered damages in an amount to be determined by the trier of fact.

## THIRD CAUSE OF ACTION- PROMISSORY ESTOPPEL

69) RPSNJ and ECPS repeat and re-allege the foregoing paragraphs as if fully set forth herein.

70) UHC made a clear and definite promise to reimburse the medical services provided by RPSNJ and ECPS to LKJ at 90th percentile of the UCR and should have expected that ROWE PLASTIC SURGERY OF NEW JERSEY, L.L.C & EAST COAST PLASTIC SURGERY, P.C. would rely upon that promise.

71) UHC should have expected ROWE PLASTIC SURGERY OF NEW JERSEY, L.L.C & EAST COAST PLASTIC SURGERY, P.C. to rely upon its promise because, among other reasons, UHC knew or should have known that RPSNJ and ECPS were going to provide all the medically reasonable and necessary services to perform bilateral breast reduction.

72) UHC should have expected ROWE PLASTIC SURGERY OF NEW JERSEY, L.L.C & EAST COAST PLASTIC SURGERY, P.C. to rely upon its promise because, among other reasons, UHC knew or should have known that it had issued payment to RPSNJ and ECPS under the same or similar circumstances for the same or similar services that were rendered to LKJ.

73) But for UHC's agreement to reimburse the services at 90th percentile of the UCR, RPSNJ and ECPS would not have otherwise provided the surgery and the related medical services to LKJ.

74) Relying on UHC's offer of reimbursement at 90th percentile of the UCR, RPSNJ and ECPS forbore from collecting payment-in-full from LKJ prior to rendering reduction mammaplasty.

75) The Providers relied on UHC's promise to their detriment.

76) As a result of UHC's actions The Providers have suffered substantial damages in an amount to be determined by the finder of fact.

## FOURTH CAUSE OF ACTION— FRAUDULENT INDUCEMENT

77) ROWE PLASTIC SURGERY OF NEW JERSEY, L.L.C & EAST COAST PLASTIC SURGERY, P.C. repeat and re-allege the foregoing paragraphs as if fully set forth herein.

78) With the intent to induce ROWE PLASTIC SURGERY OF NEW JERSEY, L.L.C & EAST COAST PLASTIC SURGERY, P.C. to enter into an ad-hoc agreement UHC intentionally represented to ROWE PLASTIC SURGERY OF NEW JERSEY, L.L.C & EAST COAST PLASTIC SURGERY, P.C that it would issue reimbursement based on 90th percentile of the UCR for medical services rendered to its consumer.

79) When UHC intentionally told ROWE PLASTIC SURGERY OF NEW JERSEY, L.L.C & EAST COAST PLASTIC SURGERY, P.C. that it was reimbursing bilateral breast reduction using "90th percentile of the UCR," UHC

DocuSign Envelope ID: 2634D9DC-BDBF-40BD-9580-EFEC7D4815AC

knew its claims processing system had no capacity to ensure the claims were paid using 90th percentile of the UCR.

80) ROWE PLASTIC SURGERY OF NEW JERSEY, L.L.C & EAST COAST PLASTIC SURGERY, P.C. justifiably relied on UHC's statements that it would reimburse their services using 90th percentile of the UCR, and as a result rendered bilateral breast reduction to UHC.

81) As a result of UHC's willful and wanton conduct ROWE PLASTIC SURGERY OF NEW JERSEY, L.L.C & EAST COAST PLASTIC SURGERY, P.C. have been damaged.

82) Based on UHC's willful and wanton conduct UHC should be punished to prevent UHC from continuing this fraudulent practice.

## CONCLUSION

83) **WHEREFORE**, ROWE PLASTIC SURGERY OF NEW JERSEY, L.L.C & EAST COAST PLASTIC SURGERY, P.C. demands judgment in the amount of $201,165.62, an award of punitive damages in an amount equal to treble the judgment amount awarded together with granting such other and further relief as the Court may deem just and proper.



DocuSigned by:
Michael Baglio
0A1D48C14A73421...

**LEWIN & BAGLIO, LLP**
By: Michael Baglio, Esq.
Attorneys for the Plaintiff
1100 Shames Drive, Suite 100
Westbury, New York 11590
Tel: (516) 307- 1777
Fax: (516) 307- 1770
L&B File No.: 2202.COM.61

L&B File No.: 2202.COM.61