UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                                         :

**ROWE PLASTIC SURGERY OF NEW JERSEY, L.L.C.** and **EAST COAST PLASTIC SURGERY, P.C.**,

                               Plaintiffs,

                  – against –

**UNITED HEALTHCARE** and **UNITED HEALTHCARE SERVICE, LLC**,

                               Defendants.
------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

23-CV-4352 (AMD) (JAM)

**ANN M. DONNELLY**, United States District Judge:

On June 13, 2023, the plaintiffs filed this action against the defendants, alleging New York state law claims for breach of contract, unjust enrichment, promissory estoppel, and fraudulent inducement.  (ECF No. 1.)  The plaintiffs filed an amended complaint on November 11, 2023.  (ECF No. 11.)  Before the Court is the defendants' motion to dismiss the amended complaint for failure to state a claim upon which relief may be granted.  (ECF No. 22-25.)  For the reasons explained below, the motion is granted.

### BACKGROUND[1]

The plaintiffs are two New Jersey "plastic surgery practices."  (ECF No. 11 ¶¶ 9–11.)  L.K.J., the plaintiffs' patient, sought a "reduction mammaplasty," also known as a breast

---

[1] The facts are drawn from the plaintiffs' amended complaint.  (ECF No. 11.)  The Court does not consider the complaint's many legal conclusions.  *See Deonarine v. United States Postal Serv.*, No. 24-CV-787, 2024 U.S. Dist. LEXIS 86972, at *2 (E.D.N.Y. May 14, 2024) ("Although all allegations in a complaint are assumed to be true, this tenet is 'inapplicable to legal conclusions.'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).

reduction surgery. (*Id.* ¶ 12.)[2] The defendants are L.K.J.'s insurers: United Healthcare Service, LLC ("UHCS") is an "insurance company" (*id.* ¶ 6), and United Healthcare ("UHC") is an "insurer" (*id.* ¶¶ 2–3). The plaintiffs are out-of-network providers and have "no standing contract" with the defendants. (*Id.* ¶ 13.) However, the plaintiffs have "received payment from" the defendants for previous breast reduction procedures. (*Id.* ¶ 26).

On January 26, 2022, Abigail, the plaintiffs' employee, called the defendants to see if they "would enter into an agreement to pay some of the costs for [the patient's] surgery, and, if so, how much." (*Id*. ¶ 13.) Paul M., the defendants' employee, answered the phone. (*See id*. ¶ 14.)

> Paul M.: Thank you for calling United Healthcare. My name is Paul, your provider service advocate. May I have your name, please?
>
> Abigail: Hi Paul. My name is Abigail. I'm calling from the providers office for benefits.
>
> Paul M.: Hi, Abigail. How are you doing today?
>
> Abigail: I'm fine, thank you.
>
> Paul M.: You're looking for benefits, right?
>
> Abigail: Yes.
>
> Paul M.: May I have initially your last name please?
>
> Abigail: It's D for Delta.
>
> Paul M.: Thank you. And you're calling from Norman Maurice Rowe right?
>
> Abigail: Yes
>
> Paul M.: You're calling for the patient [L.K.J.], correct?
>
> Abigail: Yes

---

[2] L.K.J. is not a party to this lawsuit. (*See* ECF No. 1.)

Paul M.:  Could you please verify date of birth?  of the patient please.

Abigail:  [redacted]

Paul M.:  Thank you. May I know which benefits you are looking for?

Abigail:  Benefits for outpatient surgery done in the hospital billing as professional.  In an out of network benefits.  CPT code is 19318.

Paul M.:  You are out of network, right?

Abigail:  Yes, but I need benefits for both in and out of network.

Paul M.:  Got it, let me just check, just allow me to.  Let me pull up the benefits for you.  Just bear with me.  (Long Hold)  Alright, so first I'll go for the in-network benefits, OK?

Abigail:  Uhum

Paul M.:  In network benefits are covered at $100 co-pay per visit. 100% of eligible expenses.  Deductible does not apply.

Abigail:  How much is the copay?

Paul M:  $100 co-pay per visit then 100% of eligible expenses. Deductible does not apply out of pocket is $2750.  Net amount is $62.29.  Ok.  And out of network benefits are covered at 30% coinsurance after the patient pays the deductible.  Deductible is $1500.  Nothing is met out of pocket is $5000.  Nothing is met. And it is a per covered person per calendar year plan.  And for out of network authorization is required only for sleep apnea surgery. If your if your service is related to sleep apnea then only authorization is required otherwise authorization is not required. OK.

Abigail:  Is this plan self-funded or fully funded?

Paul M.:  It's a self-funded plan.

Abigail:  Does the out of pocket include the deductible?

Paul M.:  Deductible does not apply for in network and for out of network deductible does apply towards out of pocket.

Abigail:  Is this the members primary and only insurance?

Paul M.:  Could you please repeat your question please?

3

>Abigail: Is this the Member's primary and only insurance.
>
>Paul M.: Yes, United Healthcare is primary for this patient.
>
>Abigail: What is the out of network reimbursement rate?
>
>Paul M.: It's 90% of reasonable and customary.
>
>Abigail: Is authorization required for the CPT Code?
>
>Paul M.: For out of network, authorization is only required if your service is related to sleep apnea surgery unless authorization is not required for out of your service is related to sleep apnea, then only authorization is required.
>
>Abigail: Thank you. Can I have your name and a reference number please?
>
>Paul M.: Sure. My name is Paul P-a-u-l. Initial to my last is M as in Mike. The reference number is 16997001.
>
>Abigail: Thank you.
>
>Paul M.: Thank you so much for calling. United healthcare. You're speaking to Paul. Have a wonderful day ahead and stay safe. Bye. Bye.
>
>Abigail: Thanks Paul.
>
>Paul M.: Thank you

(ECF No. 22-4.)[3] According to the plaintiffs, Paul M.'s statement that the reimbursement rate is "90% of the reasonable and customary"[4] meant that the defendants would reimburse the plaintiffs for 90% of the cost that other similar medical providers within "the same geographic area or marketplace" charged for breast reduction surgery. (ECF No. 11 ¶¶ 14, 16, 18, 21.)

---

[3] As discussed below, the Court considers the transcript of the call for purposes of resolving this motion to dismiss.

[4] The plaintiffs refer to this as "90th percentile of the UCR." (*Id.* ¶¶ 14, 16, 18, 21.) The plaintiffs say that "UCR" is a "method" that the defendants use "to price a claim for medical services;" the defendants offer as reimbursement "a percentile threshold of the costs for a service rendered by similar providers in the same geographic area or marketplace." (*Id.* ¶ 18.) "The 75th-80th percentile range of the UCR is a percentile threshold recognized in the healthcare industry as a reasonable value for a medical service." (*Id.* ¶ 21.) Neither party includes the full name of the entity for which UCR stands.

On July 6, 2022, the plaintiffs did L.K.J.'s breast reduction surgery, which the plaintiffs allege constituted acceptance of the defendants' supposed offer to reimburse them 90% of the UCR. (*Id.* ¶¶ 24–25.) The plaintiffs did not "collect[] payment in full" from the patient, but instead calculated her "out of pocket expenses based on [the defendants'] representation" that they would reimburse the plaintiffs at 90% of the UCR. (*Id.* ¶¶ 26–27.) The plaintiffs then submitted a bill to the defendants for $300,000 "for two units"[5] of breast reduction surgery, including $150,000 for the "services" that Sergio Perez, M.D. and Charles Pierce, M.D. each "rendered." (*Id.* ¶ 28.)[6]

The defendants paid the plaintiffs only $1,334.38 of the $300,000 bill. (*Id.* ¶ 32.)

The plaintiffs brought this action on June 13, 2023, alleging that the defendants "breached the agreement" to reimburse the plaintiffs at the 90th percentile of the UCR. (ECF No. 1; ECF No. 11 ¶¶ 35–37.) The plaintiffs filed an amended complaint on November 11, 2023, bringing New York law claims for breach of contract, unjust enrichment, promissory estoppel, and fraudulent inducement. (ECF No. 11 at 6–11.) They request a "judgment in the amount of $201,165.62," punitive damages "in an amount equal to treble the judgment amount," and "other and further relief as the Court may deem just and proper." (*Id.* ¶ 67.) The defendants move to dismiss the amended complaint, and the plaintiffs oppose. (ECF No. 22.)

## LEGAL STANDARD

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the

---

[5] The plaintiffs charged for two units because "[a] reduction mammaplasty is performed bilaterally." (*Id.* ¶ 29.) Rowe Plastic Surgery says that in its New Jersey zip code, a 90 % reimbursement of costs for a breast reduction is "$70,875.00 for each unit." (*Id.* ¶ 21.)

[6] The plaintiffs do not provide any information, other than their names, about Dr. Perez or Dr. Pierce or for which plaintiff they work.

5

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although "detailed factual allegations" are not required, a complaint that includes only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citations and alterations omitted).

Moreover, the plaintiffs' fraudulent inducement claim is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). "Accordingly, to be adequately pled, the fraudulent inducement claim must '(1) specify the statements that the plaintiffs contend were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rowe Plastic Surgery of New Jersey, L.L.C. v. Aetna Life Ins. Co.*, 705 F. Supp. 3d 194, 199 (S.D.N.Y. 2023) (cleaned up) (quoting *Lankau v. Luxoft Holding, Inc.*, 266 F. Supp. 3d 666, 675 (S.D.N.Y. 2017)).[7]

## DISCUSSION

### I. Documents Outside the Complaint

In support of its motion to dismiss, the defendants submitted the summary description for L.K.J.'s insurance plan and a transcript of the January 2022 call between the plaintiffs' employee and the defendants' employee. (*See* ECF No. 22-1 (Fairley Decl.); ECF No. 22-2 (insurance plan summary description); ECF No. 22-4 (transcript).) The plaintiffs argue these documents are not properly before the Court on a motion to dismiss. (*See* ECF No. 22-26 at 7, 20.)

---

[7] One of the plaintiffs in this action, Rowe Plastic Surgery, brought a similar claim in the Southern District of New York. That action was dismissed after the plaintiffs filed this action.

6

"A complaint is deemed to contain a document if any one of three conditions is satisfied." *Rowe Plastic*, 705 F. Supp. 3d at 200. "First, the complaint may attach the document or incorporate it by reference." *Id.* (citing *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). "Second, the complaint may rely upon its terms and effect to such an extent that the document is 'integral' to the complaint." *Id.* (cleaned up). "Third, the document may be subject to judicial notice." *Id.* (citing Fed. R. Evid. 201(b)).

Applying these conditions, the Court will consider the transcript of the January 2022 call but not the summary description.

    **a.    Transcript**

The January 2022 call is plainly integral to the complaint, as the plaintiff relies upon what was said during the phone call as the basis for the lawsuit. (*See* ECF No. 11 ¶¶ 16, 24, 27, 35–40, 42, 50, 53, 61.) *See Int'l Audiotext Network*, 62 F.3d at 72 ("Although the amended complaint in this case does not incorporate the Agreement, it relies heavily upon its terms and effect; therefore, the Agreement is 'integral' to the complaint, and we consider its terms in deciding whether [the plaintiff] can prove any set of facts that would entitle it to relief."); *see also Rowe Plastic Surgery*, 705 F. Supp. 3d at 200 (citing *Int'l Audiotext Network*, 62 F.3d at 72).

The plaintiffs do not dispute that the phone call is integral to the complaint. Rather, they claim that the transcript of the call "was not properly authenticated" and is "unreliable." (ECF No. 22-26 at 7–8.)

This argument is unpersuasive. The defendants have established that the recorded phone call is a business record. The defendants submitted a declaration from their Legal Services Specialist stating that the recording of the phone call was a "business record[] maintained by

7

United and UHIC in the regular course of business." (*See* ECF No. 22-1 ¶¶ 1, 6.) That is a sufficient foundation. *See Rowe Plastic Surgery*, 705 F. Supp. 3d at 200 (deeming transcript of phone call authenticated); *see also United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014) ("To lay a proper foundation for a business record, a custodian or other qualified witness must testify that the document was kept in the course of a regularly conducted business activity and also that it was the regular practice of that business activity to make the record.").

The plaintiffs argue, citing Federal Rule of Evidence 803(6), that "UHC has failed to establish the recording and the transcript is an accurate reproduction of the conversation recorded" because "UHC has not shown: (1) the competency of the transcriptionist; (2) the fidelity of the recording equipment; or (3) the absence of material deletions, additions, or alterations in the relevant part of the tape." (ECF No. 22-26 at 7.) This argument misstates the evidentiary burden. Under Rule 803(6)(E), "the opponent" to admission of the evidence at issue — here, the plaintiffs, must "show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." The plaintiffs have not done so. They argue, with no citations to case law, that the transcript is unreliable because "[t]here is obviously more going on during this phone call than the transcript reveals." (ECF No. 22-26 at 7–8.) The plaintiffs stress that "[Paul M.], UHC's employee, knows who is calling and which patient the caller is calling about without [Abigail], The Providers' employee, providing that information." (*Id.*) The relevant part of the transcript follows:

> Paul M.:  Thank you for calling United Healthcare. My name is Paul, your provider service advocate. May I have your name, please?
>
> Abigail:  Hi Paul. My name is Abigail. I'm calling from the providers office for benefits.
>
> Paul M.:  Hi, Abigail. How are you doing today?

8

>Abigail:  I'm fine, thank you.
>
>Paul M.:  You're looking for benefits, right?
>
>Abigail:  Yes.
>
>Paul M.:  May I have initially your last name please?
>
>Abigail:  It's D for Delta.
>
>Paul M.:  Thank you.  And you're calling from Norman Maurice Rowe right?
>
>Abigail:  Yes
>
>Paul M.:  You're calling for the patient [L.K.J.], correct?
>
>Abigail:  Yes

(ECF No. 22-4 at 2 (transcript).)  Nothing about this conversation suggests that the defendants did "not provide[] the Court with the full conversation or [left] critical information out of the transcript."  (ECF No. 22-26 at 8.)  Rather, it suggests that Paul M. had spoken to Abigail before; indeed, the plaintiffs allege that although they are out-of-network providers, they have nonetheless "received payment from [the defendants]" for previous breast reduction procedures.  (*Id.* ¶¶ 13, 26.)  The plaintiffs presumably contacted the defendants in connection with those payments.

Accordingly, the Court considers the transcript of the phone call in determining whether the complaint is legally sufficient.

### b.  Summary Insurance Plan Description

The parties dispute whether the plan is incorporated by reference or integral to the complaint.[8]  First, the defendants argue that the Court "may properly consider the Plan because it is referenced in Plaintiffs' Amended Complaint as L.K.J. was 'a consumer of [United's] health

---

[8] Neither party argues that the Court can take judicial notice of L.K.J.'s insurance plan, and the plan is not attached to the complaint.  (*See* ECF No. 22-26 at 14.)

9

insurance products' and the Plan is the health insurance product referenced." (ECF No. 22-25 at 12 (citing ECF No. 11 ¶12 n.1).)  A document is incorporated by reference if the complaint makes, "a clear, definite and substantial reference to the document[]." *McLennon v. City of New York*, 171 F. Supp. 3d 69, 88 (E.D.N.Y. 2016) (cleaned up).  The complaint does not make "a clear, definite and substantial reference" to the summary plan description.  The portion of the complaint that the defendants quote refers only to "health insurance products;" it makes no reference to the summary plan description.  (*See* ECF No. 11 ¶12 n.1.)  Accordingly, the summary plan description is not incorporated by reference.  *See Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 608 (E.D.N.Y. 2017) (finding a document not incorporated by reference because "the Amended Complaint mentions the interaction with Mr. Gilmartin (one of the Defendant's managers at JFK), who wrote the document, but not the Reasonable Suspicion Testing document itself," which "[w]hile subtle, this distinction is crucial because it demonstrates that Plaintiff did not make a clear and definite reference to the Reasonable Suspicion Testing document." (cleaned up)); *see also Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 124 (S.D.N.Y. 2010) (noting "implicit reference" insufficient to incorporate by reference).

      The defendants also argue that the summary plan description is integral to the complaint.  According to the defendants, "[e]ach of Plaintiffs' state law counts, . . . 'relate to' United's administration of L.K.J.'s . . . Plan," as "Plaintiffs contacted United to obtain a verification of benefits under the Plan[] because Plaintiffs are not in United's network of treating physicians," and "[i]t is undisputed that the only reason Plaintiffs contacted United was because their Patient was a participant in [a] Plan administered by United and they wanted to determine what benefits were available for the proposed surgery." (ECF No. 22-25 at 19.)  The plaintiffs respond that

they did not rely on the plan in drafting the complaint; they say that "most if not any reference to UHC's plan could be []stricken and the Complaint would still be sufficient," because they seek to enforce an alleged oral promise that is not a term in the plan. (ECF No. 22-26 at 20–21 (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).)

Under these circumstances, the summary plan description is not integral to the complaint. The complaint includes only "oblique references to [L.K.J.'s] insurance plan," and does "not allege that the representation about the reimbursement rate was based on the plan." *Rowe Plastic Surgery*, 705 F. Supp. 3d at 200 (rejecting similar argument to find summary plan description integral to the complaint); *see also id.* ("Surely the allegations in the [complaint], which do not even reference or quote from the plan, are insufficient to show that plaintiffs relied on the terms and effect of the summary of [the patient's] plan in drafting their complaint. This is especially so because the entire thrust of the [complaint] is based on the alleged oral representation that plaintiffs would be reimbursed at 80% reasonable and customary." (cleaned up) (quoting *Chambers*, 282 F.3d at 153)). (*See generally* ECF No. 11.)

Accordingly, the Court does not consider the summary plan description to determine whether the complaint is legally sufficient.

**II.     ERISA Preemption**

Under Section 514 (a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), "any and all State laws insofar as they may now or hereafter relate to any employment benefit plan described in section 1003 (a) of this title and not exempt under section 1003(b) of this title" are preempted. 29 U.S.C. § 1144(a). The defendant argues that the plaintiffs' claims are preempted by ERISA because L.K.J.'s insurance plan was covered by ERISA. (ECF No. 22-25 at 16–23.) The complaint, however, does not mention ERISA or allege that L.K.J.'s insurance plan was governed by ERISA. (*See* ECF No. 11.) Nor did Paul M. or

11

Abigail say during the January 2022 call that L.K.J. had an ERISA plan. (*See* ECF No. 22-4 (transcript).)[9] Because there is no proper evidence before the Court that L.K.J.'s plan is governed by ERISA, it would be premature for the Court to engage in a preemption analysis. *See Rowe Plastic Surgery*, 705 F. Supp. 3d at 201–02 (same).

## III. Failure to State a Claim

The defendants also argue that all of the plaintiffs' claims — New York law claims for breach of contract, unjust enrichment, promissory estoppel, and fraudulent inducement — for failure to state a claim upon which relief can be granted.[10]

### a. Breach of Contract

"To state a claim in federal court for breach of contract under New York law, a complaint need[s] [to] allege (1) the existence of an agreement, (2) adequate performance of the contract by plaintiff, (3) breach of contract by the defendant, and (4) damages." *DeFlora Lake Dev. Assocs., Inc. v. Park*, 654 F. App'x 9, 10 (2d Cir. 2016). "An agreement generally requires an offer and an acceptance." *McCabe v. ConAgra Foods, Inc.*, 681 F. App'x 82, 84 (2d Cir. 2017); *see Ellig v. Molina*, 996 F. Supp. 2d 236, 242 (S.D.N.Y. 2014) ("In order to establish the existence of a contract, a party must demonstrate that there was an offer and acceptance, in exchange for value — or consideration."). "[A] breach of contract claim that fails to allege facts sufficient to show that an enforceable contract existed between the parties is subject to dismissal." *Lamda Sols. Corp. v. HSBC Bank, USA, N.A.*, 574 F. Supp. 3d 205, 213 (S.D.N.Y. 2021). The plaintiffs base their breach of contract claim on the following exchange between Paul M. and Abigail:

---

[9] The defendants cite the summary of L.K.J.'s plan, but, as discussed above, the Court does not consider that summary. (*See, e.g.*, ECF No. 22-25 at 16 (citing ECF No. 22-2 (insurance plan summary description).)

[10] The Court has diversity jurisdiction over this action, and the parties agree that New York law governs this dispute.

>Abigail: What is the out of network reimbursement rate?
>
>Paul M.: It's 90% of reasonable and customary.

(*See* ECF No. 11 ¶¶ 14, 16.) According to the plaintiffs, Paul M. made a unilateral offer of 90% reimbursement that the plaintiffs accepted by performing the surgery. (*Id.* ¶¶ 18, 21, 24–25.) The defendants, on the other hand, say that Paul M. did not make an offer; rather, he merely explained the reimbursement formula under L.K.J.'s plan. (ECF No. 22-25 at 25–26.) The defendants also rely on the portion of the transcript in which Abigail asked about the benefits L.K.J. had under her plan, and specifically about the plan benefits for "outpatient surgery done in the hospital billing" "both in and out of network," "copay," "out of pocket includ[ing] the deductible," and "the out of network reimbursement rate." (*See id.* (quoting ECF No. 22-4 at 2–3).)

The record is clear that Paul M. did not make a unilateral offer during the call with Abigail. Rather, Paul M. recounted what he understood to be L.K.J.'s coverage under her plan. "No reasonable person would understand that representation to be an offer or promise to pay a particular amount to plaintiffs." *Rowe Plastic Surgery*, 705 F. Supp. 3d at 202 (on similar facts, finding a statement from an insurance company to the medical service provider's employee not an offer). According to the transcript, Paul M. was a "provider service advocate;" nothing in the complaint suggests that he had the authority to bind the defendants to a contract obligating them to pay more than $300,000 to the plaintiffs.[11] (ECF No. 22-4.) In any event, even if the

---

[11] In a different part of the complaint, the plaintiffs allege that Paul M. "intentionally represented" to the plaintiffs that the defendants "would issue reimbursement based on '90th percentile of the UCR,'" when the defendants "knew [their] claims processing system had no capacity to ensure" the plaintiffs' "claims were paid using '90th percentile of the UCR;'" the plaintiffs say that this was "not a reimbursement methodology that [the defendants] used for out-of-network claims." (ECF No. 11 ¶¶ 61–63.) If the plaintiffs are correct, it is even more unlikely that Paul M. could bind the defendants to a contract using this methodology, or that the plaintiffs really thought that he was making an offer.

13

plaintiffs really thought Paul M. was making a unilateral offer, their subjective understanding is irrelevant. *Rowe Plastic Surgery*, 705 F. Supp. 3d at 202 ("Nor can allegations related to plaintiffs' subjective understanding that this representation was a unilateral offer change the analysis, as subjective intent is completely irrelevant."); *see also Leonard v. Pepsico, Inc.*, 88 F. Supp. 2d 116, 127 (S.D.N.Y. 1999), *aff'd*, 210 F.3d 88 (2d Cir. 2000).

No reasonable person would think that Paul M.'s statement about the reimbursement rate was a promise to pay that amount. Accordingly, the plaintiffs' breach of contract claim is dismissed.[12]

### b.  Unjust Enrichment

"To state a claim for unjust enrichment under New York law, a plaintiff must plead facts showing that (1) defendant was enriched, (2) at [the plaintiffs'] expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Mount v. PulsePoint, Inc.*, 684 F. App'x 32, 36 (2d Cir. 2017). Moreover, to prevail on an unjust enrichment claim, "a party must establish that it conferred a benefit upon the other party, and that the party will retain that benefit without adequately compensating the first party therefor." *Nasca v. Greene*, 216 A.D.3d 648, 650 (2d Dep't 2023); *see Nakamura v. Fujii*, 253 A.D.2d 387, 390 (1st Dep't 1998) ("To state a cause of action for unjust enrichment, a plaintiff must allege that it conferred a benefit upon the defendant, and that the defendant will obtain such benefit without adequately compensating plaintiff therefor."); *M+J Savitt, Inc. v. Savitt*, No. 08-CV-

---

[12] Nor have the plaintiffs have not shown that there would have been any consideration for the alleged unilateral contract. *See Weksler v. Kessler*, No. 0113492/2007, 2008 WL 2563483 (N.Y. Sup. Ct. June 18, 2008) ("Plaintiff claims in her second cause of action that the Sons breached the Agreement. However, she has not alleged any consideration by her to enter into the contract and since there was no bargained-for exchange established, there was insufficient consideration for the agreement. A promise that is wholly unsupported by consideration is legally unenforceable." (cleaned up)).

14

8535, 2009 WL 691278, at *10 (S.D.N.Y. Mar. 17, 2009) ("To bring [an unjust enrichment] claim, the plaintiff must have bestowed the benefit on the defendant.").

The plaintiffs allege that the defendants' "retention of the unpaid amount for the medical services provided[] is improper[] and it is against equity and good conscience to allow [the defendants] to keep the monies." (ECF No. 11 ¶ 47.) The defendants say that the complaint does not adequately allege an unjust enrichment claim. (ECF No. 22-25 at 28–31.)

Although the plaintiffs say that "[t]he benefit conferred upon [the defendants] was the benefit of its bargain, bilateral breast reduction, and other medical services rendered to LKJ" (*see* ECF No. 11 ¶ 49), there was no benefit to the defendants, the insurers. Rather, the plaintiffs conferred a benefit "solely" "on the patient" — L.K.J. — "which is legally insufficient to allege an unjust enrichment claim." *Rowe Plastic Surgery*, 705 F. Supp. 3d at 204 (citing *Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001)); *see Travelers Indem.*, 150 F. Supp. 2d at 563 ("It is counterintuitive to say that services provided to an insured are also provided to its insurer. The insurance company derives no benefit from those services; indeed, what the insurer gets is a ripened obligation to pay money to the insured — which hardly can be called a benefit.").

Moreover, the plaintiffs do not allege that they operated on L.K.J. "at [the defendants'] request, as is required under New York law." *Rowe Plastic Surgery*, 705 F. Supp. 3d at 204; *see also Josephson v. United Healthcare Corp.*, No. 11-CV-3665, 2012 WL 4511365, at *5 (E.D.N.Y. Sept. 28, 2012) (dismissing a medical providers' unjust enrichment claim against an insurer because the medical "services were performed at the behest of [the medical providers'] patients, not United."); *Katselnik & Katselnik, Inc. v. Silverman*, No. 111147/2008, 2009 WL 3713145 (N.Y. Sup. Ct. Oct. 13, 2009) ("To prevail on an unjust enrichment claim [the

15

plaintiffs] would also have to establish that the services were performed for the defendant[;] if services were performed at the behest of someone other than the defendant, the plaintiff must look to that person for recovery." (cleaned up)).  (*See generally* ECF No. 11.)

Accordingly, the plaintiffs' unjust enrichment claims are dismissed.

### c.      **Promissory Estoppel**

To plead a promissory estoppel claim, the plaintiffs "must allege 'a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the plaintiff[s].'" *Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 457 (S.D.N.Y. 2021) (quoting *Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995)).  "A promise that is too vague or too indefinite is not actionable under a theory of promissory estoppel."  *Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*, 680 F. Supp. 3d 322, 342 (S.D.N.Y. June 27, 2023).

The plaintiffs' promissory estoppel claim relies on the same representation as the breach of contract claim — that the defendants "made a clear and definite promise to reimburse the medical services provided" by the plaintiffs "at 90th percentile of the UCR."  (ECF No. 11 ¶ 53.)  The transcript of the call refutes that claim.  The relevant exchange follows:

> Abigail:  What is the out of network reimbursement rate?
>
> Paul M.:  It's 90% of reasonable and customary.

(ECF No. 22-4 at 2.)  At no point during this exchange did Paul M. make "a clear and unambiguous promise" to pay a particular amount.  On the contrary, the context "makes plain that [the] defendant[s'] employee was merely reciting the benefits available if plaintiffs performed the breast reduction surgery on [L.K.J.], not promising to pay plaintiffs a particular amount if the surgery was in fact performed."  *Rowe Plastic Surgery*, 705 F. Supp. 3d at 204 (on

similar facts, dismissing promissory estoppel claim). Accordingly, the plaintiffs' promissory estoppel claim is dismissed.

### d. Fraudulent Inducement

To state a claim for fraudulent inducement, the plaintiffs "must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff[s] reasonably relied; and (5) which caused injury to plaintiff[s]." *President Container Grp. II, LLC v. Systec Corp.*, 467 F. Supp. 3d 158, 165 (S.D.N.Y. 2020) (quoting *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001)). The defendants argue that the fraudulent inducement claims must be dismissed because they are not adequately pled under Federal Rule of Civil Procedure 9(b). (ECF No. 22-25 at 33–35.)

Under the heightened pleading standard of Federal Rule of Civil Procedure 9(b), the complaint must include allegations that "explain why the statement[] w[as] fraudulent." *Lankau*, 266 F. Supp. 3d at 675. Here, the complaint alleges that the defendants "intentionally represented" to the plaintiffs "it would issue reimbursement based on '90th percentile of the UCR'" when the defendants "knew [their] claims processing system had no capacity to ensure" the plaintiffs' "claims were paid using '90th percentile of the UCR,'" and that this was "not a reimbursement methodology that [the defendants] used for out-of-network claims." (ECF No. 11 ¶¶ 61–63.) As discussed above, Paul M. did not promise to pay the plaintiffs "90% of the UCR." In any event, the complaint does not "explain why" the alleged promise to pay 90% of the UCR was "fraudulent." *Lankau*, 266 F. Supp. 3d at 675. Whether the defendants' "processing system permits a certain amount of reimbursement" and whether the defendants use a usual reimbursement methodology "does not indicate that defendant could not and would not pay the

17

represented reimbursement amount." *See Rowe Plastic Surgery*, 705 F. Supp. 3d at 205 (on similar facts, dismissing a fraudulent inducement claim).

Accordingly, the plaintiffs' fraudulent inducement claims are also dismissed.[13]

## CONCLUSION

For these reasons, the defendants' motion to dismiss is granted.

**SO ORDERED.**

s/Ann M. Donnelly
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
September 26, 2024

---

[13] Because the complaint is dismissed in its entirety under Rule 12(b)(6), the Court does not address the defendants' arguments that United Healthcare is "not a proper party to this case" (*see* ECF No. 22-25 at 8, 13–14), that the defendants "were not parties to the telephone call" at issue because Abigail said yes when Paul M. asked if she was calling on behalf of "Norman Maurice Rowe" instead of "Rowe Plastic Surgery" (*see id.* at 14–16), or that the plaintiffs would not be entitled to punitive damages (*id.* at 35–36).